### WILSON v. CLEMENT.

#### (Circuit Court, D. Vermont. December 31, 1903.)

1. NEW TRIAL—JURORS—PREJUDICE.

  Where, in an action for slander alleged to have been spoken by defendant in the course of speeches made by him during a political campaign on an issue of the enforcement of the liquor law, after verdict in favor of defendant a new trial was asked on the ground that one of the jurors had been actively engaged in opposing the liquor law, and had taken a permanent part in assisting to elect defendant to an office on such issue, and another juror was a station agent of a railroad near defendant's residence, while defendant was president and manager of the road, and had been station agent since defendant ceased to be president and manager of the road, though he still owned stock therein, plaintiff was entitled to a new trial.

2. SAME—WAIVER.

  Where, during a trial of an action for slander, it was discovered that two jurors were not impartial, plaintiff did not waive his right to a new trial for the bias of such jurors by proceeding with the trial under direction of the court.

At Law. On motion for new trial. Motion granted.

Max L. Powell, for plaintiff.

William B. C. Stickney and Alexander Dunnett, for defendant.

WHEELER, District Judge. This is an action of slander for charging the plaintiff with the murder of one Goshea. The plain-

tiff, a citizen of Massachusetts, was connected with a detective bureau there, and was procured to come into Vermont by the state's attorney of Windsor county to assist in ferreting out violations of the liquor law, and other crimes in that county. He became unpopular among, and incurred hostility of, those opposed to that law; and, in an encounter at night with Goshea and one or two others of these, he shot Goshea (who died) in alleged self-defense. He was indicted for manslaughter and acquitted. The defendant engaged in an open political crusade against the liquor law of Vermont, during which he made many public speeches in various parts of the state, in which he alluded to the coming of the plaintiff into the state and to the shooting of Goshea as an example of the working of the liquor law and of its effects. This was followed by a campaign for the nomination of the defendant for Governor by the Republican state convention, for his election by the people, and by the Legislature. During the trial the plaintiff's counsel were informed that one of the jurors was a sympathizer with the defendant in that crusade and those campaigns, and took an active part in the canvass for the nomination of the defendant for Governor, and in the elections which followed. This was brought to the attention of the counsel for the defendant and of the court, but not in hearing of the jury; and, as the juror lived at a distance, and a motion for discharging the juror could not then be seasonably prepared, action upon it was postponed by direction of the court, and the trial was proceeded with, resulting in a verdict for the defendant. Another juror was station agent of the Rutland Railroad, near the residence of the defendant, while the defendant was president and manager of the road, and has been so since the defendant ceased to be president of and to manage the road, wherein the defendant is still a director and owner of a small amount of stock. This matter has been brought to the attention of the court, in connection with the other, since the verdict. This motion for a new trial on account of the alleged partiality of these jurors, and because the verdict is said to be against the weight of evidence, has been heard. The affidavits in support of the motion show clearly that the juror first mentioned was actively engaged in opposition to the liquor law in the crusade against it, and for the nomination of the defendant for Governor on that issue by the Republican state convention, and for his election by the people afterwards, and by the Legislature; that he presided at a meeting, introduced the speaker, and was so openly and actively engaged in behalf of the defendant's crusade and candidacy that he was thought by politicians and voters in his vicinity to be employed for that purpose. The defendant denies any employment of the juror by him for that purpose, and anything more than a casual acquaintance with him, which is taken and considered, so far as the defendant was personally concerned, to be true. The juror himself would be a competent witness for disproving such disqualifications in favor of the verdict, although he would not be competent against the verdict. No proof from him has been produced.

The principal question upon the trial was as to the sense in which the defendant used the word "murder" in alluding to the plaintiff. The defendant himself testified that, upon occasions and in speeches

set up in the declaration and mentioned in the testimony, he said a spotter brought into the state shot a harmless man to death; that he should have been indicted for murder, as the greater included the less, and that he could not find another case where murder was indicted for manslaughter, and that he referred to the man who shot Goshea; that he always said, in alluding to this, that the indictment should have been for murder, and the degree left to the jury, as the greater included the less. Other witnesses testified that he said an armed spotter had come into the state and shot an innocent man to death, and had been indicted for manslaughter instead of for murder. Some of these and other witnesses testified to this qualification of the words, so that the sense in which the words were spoken was more in issue than anything else. As this was in the campaigns in which the juror was engaged on the same side with the defendant, he might, and probably would, be inclined to the view of the defendant and his witnesses as to the meaning of the words so often used by the defendant in the course of the campaign. Such a view would be likely to disturb and tend to destroy the impartiality of the juror to which the plaintiff was entitled in the trial of a question so much dependent on what might be a matter of opinion in the campaign in which the juror had been engaged in behalf of the defendant's candidacy. The other juror cannot justly be said to be a servant of the corporation of which the defendant was at the time of the trial—although he had been before—a manager who might interfere with the juror's employment afterwards. Still, in view of the relation of the juror to the corporation while the defendant had been its president and active manager near by, his inclinations and sympathies might be with the defendant and against the plaintiff upon any question involved in the trial. This relation might not alone be worthy of serious consideration upon this motion, but, if it had been made known, it would probably have prevented his sitting, and it heightens this objection to the verdict now. That of the other juror is much graver.

The theory of a trial by jury is a trial by impartial jurors, free from any special prejudice or situation which might incline them substantially more to one party than to the other. Such bias often exists unconsciously, but, if so, it may be equally dangerous to fair, impartial, and fearless consideration of the evidence bearing upon an issue to be tried. In this view, the plaintiff does not seem to have had such a trial as he was entitled to by a jury as nearly impartial as could be, and ought to have been, obtained.

It is said that, the trial having proceeded after this objection was so discovered, it was waived. But it was proceeded with at that time in view of the circumstances as to what it might or might not amount to under direction of the court, by compliance with which none of the rights of the parties would be waived. Therefore the case is considered now as it would have been then, if the motion to set aside the verdict on this ground could have been prepared and presented then, as it has been now.

Motion granted.